IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA WINGO (and similarly situated individuals)<br>3737 Gateway Lakes Drive<br>Grove City, Ohio 43123<br><br>  Plaintiff,<br><br>v.<br><br>NATIONWIDE ENERGY PARTNERS, LLC<br>230 West Street, Suite 150<br>Columbus, Ohio 43215,<br><br>  Defendant. | Case No. 2:17-CV-150<br><br>Judge:<br><br>Magistrate Judge:<br><br>JURY TRIAL DEMANDED |

## **CLASS ACTION COMPLAINT**

This is a Complaint under the Fair Debt Collections Practices Act, 15 U.S.C. §§1692, *et seq*. ("FDCPA") against Nationwide Energy Partners LLC ("NEP"). NEP meters and bills residential consumers for electric, water and sewer services consumed in apartments and condominiums. When NEP attempts to secure payment from consumers who have fallen behind on their utility bills, NEP does so as a "debt collector" working on behalf of a "creditor," as the FDCPA defines those terms. NEP wields a tool that traditional debt collectors do not: the ability to disconnect utility service. NEP routinely uses this tool with no regard whatsoever for the requirements of the FDCPA.

Accordingly, for her Complaint against NEP, individually and on behalf of a class of similarly-situated consumers, Plaintiff Cynthia Wingo alleges and avers as follows:

## PARTIES AND JURISDICITION

1. Plaintiff Cynthia is a resident of Grove City, Ohio, located in the Southern District of Ohio.

2. Nationwide Energy Partners LLC ("NEP") is a Delaware limited liability company with its principal place of business is in Columbus, Ohio, located in the Southern District of Ohio. Defendant is therefore subject to the personal jurisdiction of this Court.

3. This Court has subject matter jurisdiction under 28 USC §1331 and 15 USC §1692k(d).

4. Venue in this Court is proper under 28 USC §1391(b).

## FACTS COMMON TO ALL CLAIMS

5. Plaintiff incorporates by reference the allegations of paragraphs 1 through 4 of this Complaint.

6. NEP describes itself as "an innovative energy solutions company that partners with property owners to provider a higher level of detail and control over their electricity and/or water usage."[1] NEP meters and bills residential consumers for electric, water and sewer services. Its method of business is sometimes referred to as "submetering."

7. NEP conducts business throughout Central Ohio, as well as in New York, Pennsylvania, Tennessee and Kentucky.

8. On April 10, 2015, Mark Whitt, a condominium resident, filed a complaint against NEP at the Public Utilities Commission of Ohio (PUCO), docketed as PUCO Case No. 15-000-EL-CSS (the "*Whitt* proceeding"). The complaint in the *Whitt* proceeding alleges, among other things, that NEP is engaged in the business of a 'public utility," as defined under Ohio law, and subject to the jurisdiction and regulation of the PUCO.

---

[1] https://nationwideenergypartners.com/about-us

9. NEP denies that the complainant in the *Whitt* proceeding is a customer of NEP or a consumer of utility services. NEP asserts that complainant's condominium association is NEP's customer. Thus, according to NEP, any amounts billed and collected by NEP represent funds owed to the condominium association, and not to NEP.

10. On December 16, 2015, the PUCO initiated an investigation in PUCO Case No. 15-1594-AU-COI (the "COI proceeding") to determine, among other things, whether companies that submeter utility service are or should be subject to regulation as "public utilities."

11. NEP filed comments in the COI proceeding denying that the consumers to whom it renders bills are NEP customers. NEP asserts that landlords and condominium associations are its customers. Thus, according to NEP, any amounts billed and collected by NEP represent funds owed to the landlords and condominium associations where end-use consumers reside, and not to NEP.

12. In January 2016, a putative class action was filed against NEP alleging violations of the Ohio Consumer Sales Practices Act. The proceeding is styled *Wuerth, et al. v. Nationwide Energy Partners, LLC,* Case No. 16 CV 143, Franklin County, Ohio Court of Common Pleas (the "*Wuerth* litigation").

13. On October 16, 2016, Plaintiffs' counsel in the *Wuerth* litigation took the deposition of John Calhoun, a Resident Advocate at NEP responsible for investigating complaints by residents and tenants concerning NEP's services and billing. Mr. Calhoun confirmed that these residents and tenants are not NEP's customers:

> Q. Who are NEP's customers?
>
> A. Typically the property owner or the association at the property.
>
> Q. When you use the term "residents," what do you mean?

> A. So anyone who's living or, like, habituating at one of our partner properties.
>
> Q. When you say "partner properties," do you mean customers, is that one in the same?
>
> A. Yes.
>
> Q. And you said that customers typically would be property owners. Are there situations where – well, does NEP have any customers who are not property owners?
>
> A. So that qualifier was for the associations, so a condo association, for example.

14. Mr. Calhoun also confirmed that NEP renders its services on behalf of the entities that manage multi-family properties, and not as a utility service provider to consumers:

> Q. What goods or services does NEP sell?
>
> A. So NEP is a unified billing and metering service provider.
>
> Q. What does that mean?
>
> A. It means we install meters, measure usage, and then generate a bill on behalf of the property based on that information.

15. On December 15, 2016, Cynthia Wingo filed a complaint against NEP at the PUCO, docketed as PUCO Case No. 16-2401-EL-CSS (the "*Wingo* proceeding"). The complaint alleges, among other things, that NEP is engaged in the business of a "public utility," as defined under Ohio law, and subject to the jurisdiction and regulation of the PUCO.

16. NEP denies that the complainant in the *Wingo* proceeding is a customer of NEP. NEP asserts that complainant's landlord is NEP's customer.

17. Based on NEP's repeated assertions and sworn testimony, NEP is judicially and equitably estopped from asserting that it collects or attempts to collect debts from plaintiffs and the class in its capacity as a "creditor," within the meaning of 15 USC §1692a(4).

## COUNT I: FDCPA VIOLATIONS AS TO PLAINTIFF WINGO

18. Plaintiff incorporates by reference the allegations of paragraphs 1 through 17 of this Complaint.

19. Plaintiff executed a lease for a two-bedroom residential unit at Gateway Lakes Apartments in Grove City, Ohio, in October 2013. The lease does not identify the utility service provider.

20. Plaintiff has never executed a service agreement or other written contract with NEP.

21. The term of the lease commenced on October 24, 2013. From that date to the present, Plaintiff has used electricity for heating, refrigeration, cooking and other household uses; water for drinking and bathing; and sewage disposal services for sanitation.

22. Plaintiff received her first bill for utility services in January 2014. The bill was issued by NEP.

23. The amount of Plaintiff's first bill was over $600. In inquiring about the amount of the bill, the property manager at Gateway Lakes or an NEP representative told Plaintiff that a water leak contributed to the large balance.

24. Unable to afford the full amount of her first bill, Plaintiff paid $150 toward her second bill. This amount represented the approximate charges owed for the second billing period. Thereafter, and continuing to the present, NEP has continued to add late fees and penalties to bills rendered to Plaintiff.

25. In an effort to strong-arm Plaintiff into paying the excessive charges levied on NEP bills, NEP has not only threatened to disconnect utility service, but has actually disconnected service several times since she has lived at Gateway Lakes.

26. Most recently, on December 12, 2016, a representative of NEP identifying herself as "Nicki" informed Plaintiff that NEP would disconnect utility service to Plaintiff's apartment if she did not pay $600 by December 19, 2016.

27. Plaintiff contacted an attorney, who filed a complaint with the Public Utilities Commission of Ohio on December 16, 2016.

28. In reporting on Plaintiff's PUCO complaint, NEP's CEO, Gary Morches, is quoted as saying, "Our guidelines, which exceed the industry's practices, are that we do not disconnect service during the holidays or during extreme temperatures, so Ms. Wingo's service will continue."[2]

29. Notwithstanding the filing of the PUCO complaint and notice to NEP that Plaintiff disputed the amount allegedly owed, NEP sent an email to Plaintiff on February 3, 2017, with the following message:

> Good Afternoon,
>
> According to our records, your billing account has a past due balance, which has now exceeded $500.00. On behalf of your community, Nationwide Energy Partners would like to speak to you to schedule a payment or to make payment arrangements. You are welcome to respond directly to this email, or contact our Resident Support Group at 1-877-818-2637. We are available to assist you Monday through Friday from 8:00 AM through 6:00 PM.
>
> Resident Support Group
> Nationwide Energy Partners
> 614-918-2031

---

[2] http://www.dispatch.com/content/stories/business/2016/12/16/stop-shutoff-filing-could-test-submeter-firm-regulation.html

6

877-818-2637
support@nationwideenergypartners.com

30. Plaintiff's recent bill from NEP, with a due date of January 8, 2017, shows a "total amount due" of $4,270.40.

31. A significant portion of the debt allegedly owed consists of late fees, penalties, common area charges, and other amounts that Plaintiff is not obligated to pay under her lease or any contract with her landlord, Gateway Lakes Apartments.

32. No portion of the debt allegedly owed represents a debt owed to NEP. Any amounts lawfully owed by Plaintiff for the use and consumption of public utility service are owed to her landlord, Gateway Lakes Apartments, for whom NEP is merely a billing and collection agent.

33. Plaintiff is a "consumer" of utility services at Gateway Lakes Apartments, as defined in 15 USC §1692a(3).

34. The amount allegedly owned by Plaintiff to Gateway Lakes Apartments is a "debt" as defined in 15 USC §1692a(5). In attempting to collect this debt through various instrumentalities of interstate commerce, NEP acts as a "debt collector" as defined in 15 USC §1692a(6).

35. The debt allegedly owned by Plaintiff includes late fees, penalties, common area charges, and other amounts not expressly authorized by an agreement creating the debt or otherwise permitted by law. NEP's attempts to collect such amounts is unfair, unconscionable, and in violation of 15 USC §1692f(1).

36. NEP has never supplied to Plaintiff the notice required by 15 USC §1692g(a), in violation of the express provisions thereof.

37. NEP has never informed Plaintiff that it is attempting to collect a debt and that information obtained will be used for that purpose, in violation of 15 USC §1692e(11).

38. Despite actual and constructive knowledge that Plaintiff disputes the debt NEP is attempting to collect, NEP continues to attempt to collect the debt, in violation of 15 USC §1692g(b).

39. NEP's threats to disconnect Plaintiff's utility service for nonpayment of a debt is unfair, unconscionable, and in violation of 15 USC §1692e(5) and 15 USC §1692f.

40. NEP's disconnection of utility services based on Plaintiff's failure to pay a debt is unfair, unconscionable, and in violation of 15 USC §1692f.

41. Plaintiff and the class have been damaged by NEP's violations.

**COUNT II: FDCPA VIOLATIONS AGAINST THE CLASS**

42. Plaintiff incorporates by reference the allegations of paragraphs 1 through 41 of this Complaint.

43. Plaintiff brings this action on their own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

44. The class consists of:

> All consumers in the state of Ohio that NEP has contacted through means of interstate commerce to collect or attempt to collect a debt, from the applicable limitations period to the present.

45. The statute of limitations for FDCPA claims is one year. As detailed below, however, NEP engages in a business model that purposefully deceives consumers into believing that NEP is the "creditor" to whom the consumer owes debts collected by NEP. Thus, Plaintiff and the class could not have reasonably discovered or been put on notice that NEP committed

FDCPA violations prior to the otherwise-applicable one year limitations period. Plaintiff will address the appropriate limitations period in the motion seeking class certification.

46. NEP renders monthly utility bills to approximately 30,000 consumers in Ohio, New York, Pennsylvania, and other states.

47. When consumers fail to pay amounts billed by NEP, the unpaid amounts, according to NEP, constitute a debt owed to NEP's customers. NEP routinely and in the ordinary course of business uses unfair, deceptive, and unlawful practices to collect or attempt to collect these debts.

48. For starters, NEP deceives and confuses consumers about the nature of the relationship among NEP, NEP's customers, and consumers receiving utility bills. NEP's bills and communications with consumers are designed to create the impression that the consumer receiving the bill is a customer of NEP.

49. NEP, however, insists that the consumers it bills for utility services are not its customers. It has made this claim in a pending PUCO investigation, two complaint proceedings at the PUCO, and in sworn testimony proffered in a pending state court civil action. NEP is therefore judicially estopped from asserting that it is a "creditor" to Plaintiff and members of the class.

50. NEP routinely and in the ordinary course of business includes late fees, penalties, common area charges, and other amounts not expressly authorized by an agreement, or otherwise permitted by law, on bills issued to consumers. These amounts constitute part of the debt NEP subsequently collects or attempts to collect on behalf of third parties.

51. NEP routinely and in the ordinary course of business uses U.S Mail, electronic mail, and other instrumentalities of interstate commerce to collect or attempt to collect debts on behalf of third parties.

52. When NEP's initial debt collection efforts are unsuccessful, NEP routinely and in the ordinary course of business threatens to disconnect utility services as a means to secure payment of the debt.

53. When NEP's threat of disconnection is not successful, NEP routinely and in the ordinary course of business proceeds to disconnect utility services as a means to secure payment of the debt.

54. When the disconnection of utility services is not sufficient to secure payment, NEP routinely and in the ordinary course of business sues consumers for the debt and, where necessary, enforces any judgment obtained through liens, garnishments, and other legal process.

55. NEP not only routinely violates the Fair Debt Collection Practices Act; its entire business model is predicated on evading and avoiding the requirements of the Act. On information and belief, NEP does not maintain any policies, procedures, or other measures to maintain compliance with the FDCPA.

56. The class is so numerous that joinder of all members is impracticable.

57. The claims of the members of the class share common questions of law and fact. NEP uses substantially the forms to contract with apartment owners and condominium developers for the delivery of utility services to consumers. NEP uses the same or substantially similar bill format for all bills rendered to consumers. NEP levies uniform late charges and penalties, follows a standard protocol for issuance of disconnection notices, and observes

uniform disconnection and reconnection procedures. NEP's treatment of Plaintiff is representative of how NEP treats consumers generally.

58. The damages to which the class members are entitled share many common facets. Consumers are routinely assessed late fees, penalties, and common area charges that are not provided for in any agreement. Consumers unable to pay these charges or who fall behind on their bills are harassed with threats of disconnection, actual disconnection, lawsuits, and enforcement of judgments. Such consumers suffer not only financial harm, but harm in the form of annoyance, embarrassment, frustration, and emotional distress.

59. Plaintiff's claims are typical of the claims of the class, and NEP's defenses to Plaintiff's claims are expected to be typical of NEP's defenses to the claims of other class members.

60. Plaintiff will fairly and adequately protect the interests of the class.

61. A class action is appropriate because the common questions described above predominately over any class member-specific questions. After the common issues have been resolved, the calculation of individual class members' damages will involve merely a simple calculation based on easily accessible data.

62. A class action is superior to other available methods for fairly and efficiently adjudicating this dispute. Joined of all class members in practical and the damages suffered by individual class members may be relatively small compared to the expected cost of litigating an individual suit. This expenses makes it difficult for the class members to individually prosecute lawsuits to redress the harm done to them NEP's wrongdoing.

63. Moreover, addressing these claims in a single action will avoid the risk of inconsistent adjudications of individual class members' claims, which could establish

11

incompatible standards of conduct for NEP to follow in this State. NEP has acted and continues to act in a manner applicable to all class members generally.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class as defined herein, respectfully demands a trial by jury and prays for judgment as follows:

- A. Certifying that this civil action may be maintained as a Class Action by the named Plaintiff as representatives of the Class and that Plaintiff's attorneys of record be designated as Class counsel;
- B. Awarding actual damages to Plaintiff and the Class;
- C. Awarding additional statutory damages to Plaintiff and each individual class member in the amount of $1,000;
- D. Awarding additional statutory damages to the Class in the amount of $500,000;
- E. Awarding pre-judgment and post-judgment interest to Plaintiff and the Class, as allowed by law;
- F. Awarding attorneys' fees and costs to counsel for Plaintiff and the Class; and
- G. Granting such other and further relief as is just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all Counts so triable.

Dated: February 21, 2017					Respectfully submitted,


					*/s/ Mark A. Whitt*
					Mark A. Whitt (0067996)
					Trial Attorney
					**WHITT STURTEVANT LLP**
					The KeyBank Building
					88 East Broad Street, Suite 1590
					Columbus, Ohio 43215
					(614) 224-3911
					(614) 224-3960 (fax)
					whitt@whitt-sturtevant.com


					Shawn J. Organ (0042052)
					Joshua M. Feasel (0090291)
					Carrie M. Lymanstall (0084393)
					**Organ Cole llp**
					1330 Dublin Road
					Columbus, Ohio   43215
					614.481.0900
					614.481.0904 (fax)
					sjorgan@organcole.com
					jmfeasel@organcole.com
					cmlymanstall@organcole.com

					ATTORNEYS FOR
					PLAINTIFF